UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOEL SOTO, | : | |
|     Petitioner, | : | CIVIL ACTION NO. |
| | : | 3:13-CV-268 (JCH) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | FEBRUARY 5, 2014 |
|     Respondent. | : | |

**RULING RE: PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 (Doc. No. 1)**

In October 2009, petitioner Joel Soto was convicted by a jury of two counts of conspiracy with intent to distribute, respectively, five kilograms or more of cocaine (Count One) and fifty grams or more of cocaine base (Count Two), each count in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) & 846.  On June 23, 2010, this court sentenced him to 228 months on each count, to be served concurrently.  Appearing pro se, Soto now moves to vacate, set aide, or correct his sentence pursuant to 28 U.S.C. § 2255, alleging ineffective assistance by his trial counsel during pretrial plea negotiations and at sentencing.

For the reasons stated below, no evidentiary hearing is required, and Soto's Motion (Doc. No. 1) is **DENIED.**

**I.   BACKGROUND**

Of the twenty-nine defendants indicted as part of this conspiracy, only Soto received a jury verdict following a completed trial.[1]  See United States v. Sanchez et al., No. 3:9-CR-23-JCH-9, Doc. No. 953.  From February 2009 through June or July 2009,

---

[1] Soto was one of two defendants who went to trial in this 29 defendant case, but his co-defendant, George Sanchez, pled guilty in the middle of trial.  See United States v. Sanchez et al., No. 3:09-CR-23 (JCH), Doc. No. 949.  A total of twenty-seven defendants, including Sanchez, eventually pled guilty.  In May 2009, upon motion by the government, the court dismissed the charges against one of the defendants.  See id., Doc. No. 423.

1

Soto was represented by now-retired Attorney Terri-Ann Knapsack.  See id., Doc. No. 250.  Thereafter, including during the plea negotiations and sentencing at issue,[2] Soto's case was handled by one of Attorney Knapsack's partners, Attorney Michael Hillis, whom the court appointed to represent Soto in July 2009, pursuant to the Criminal Justice Act.  See id., Doc. No. 988.

    A.    <u>Plea Offer</u>

By letter dated August 5, 2009 from Assistant United States Attorney ("AUSA") Harold Chen to Attorney Hillis, the government proposed a plea deal (the "Plea Offer").  See Gov't's Ex. B (Doc. No. 14-2).  In a paragraph of the cover letter quoted by Soto in his Motion, AUSA Chen wrote:

> <u>The terms offered in this plea agreement, particularly the absence of the filing of a second-offender information, shall expire on August 19, 2009</u>.  Under the terms of this plea agreement, your client may argue for a sentence as low as 10 years of imprisonment.

Id. at 1; see Pet'r's Mot. to Vacate ("Pet'r's Mot.") (Doc. No. 1) ¶ 15 (quoting the letter).  In another paragraph of the cover letter not quoted by Soto, AUSA Chen advised:

> [I]f your client is convicted after trial, the government intends to argue at sentencing that the base offense level under U.S.S.G. § 2D1.1(a)(3) should be 36 (more than 50 kilograms of cocaine and/or 1.5 kilograms of crack cocaine); that your client should receive a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon; and that an appropriate Guideline range for sentencing would be 30 years to life imprisonment.

Gov't's Ex. B at 1.

---

[2] In his Reply to the government's Opposition brief, Soto newly alleges that Attorney Knapsack rendered ineffective pretrial assistance.  See Pet'r's Reply (Doc. No. 20) ¶ 2.  There are no specific allegations, however, from which the court could reasonably infer the factual basis for such a claim against Attorney Knapsack.  Moreover, in Soto's Section 2255 Motion, only Attorney Hillis is mentioned in connection with the government's August 2009 plea offer.  See Pet'r's Mot. to Vacate ("Pet'r's Mot.") (Doc. No. 1) ¶ 15.

The Plea Offer also contained a stipulated guideline range of 151 to 188 months, based on a criminal history category ("CHC") VI and a total offense level of 29, which included a three-point reduction for acceptance of responsibility. Id. at 5. However, the Plea Offer acknowledged that the court would not be bound by this range in sentencing Soto. Id.

In a fax to AUSA Chen on Wednesday, August 19, Attorney Hillis asked to enlarge the time for acceptance of the Plea Offer to the following Monday, August 24, stating,

> There is a good chance that I can convince Mr. Soto that the plea agreement is in his best interest if you can extend the time to accept the offer from today until Monday at 12:00 pm.
>
> In Mr. Soto's defense, he has had to deal with a "changing of the guard" concerning attorneys. I will need the extra time to discuss the ramifications of his choices.

Gov't's Ex. C (Doc. No. 14-3) at 2.

In his sworn affidavit, Attorney Hillis attests that he sought—and the government agreed to—this extension. See Hillis Aff., Gov't's Ex. D (Doc. No. 14-4) ¶ 3. Further, he attests that he thoroughly discussed the Plea Offer with Soto and informed Soto about the likelihood that, were Soto convicted after a trial, the sentence would be substantially longer than the Plea Offer's guideline range. Id. ¶ 4. Finally, Attorney Hillis attests that, while he recommended Soto accept the Plea Offer, he stressed to Soto that the decision was Soto's to make and that Soto decided to go to trial partly in the belief that certain cooperating witnesses would not actually testify. Id.

Soto did not submit an affidavit with any of his pleadings. From his representations to the court, as well as his verbatim quotation of the Plea Offer, it would appear that Soto received a copy of the Plea Offer from Attorney Hillis. See Pet'r's Mot.

3

¶ 15.  However, in his Motion, Soto alleges no specific facts in connection with the Plea Offer.  See id. ¶¶ 15-16.  The only allegation is that Attorney Hillis's "failure to pursue such a beneficial plea offer was ineffective assistance of counsel."  Id. ¶ 16.  In his Reply to the government's Opposition, Soto newly represents (not under oath) that, when asked what would happen if Soto went to trial, Attorney Hillis said, "[Y]ou will probably get the same amount of time (10 years) they offered you."  Pet'r's Reply (Doc. No. 20) ¶ 6.  However, Soto provides no context for this alleged statement.  Nor does he allege specific facts concerning his discussions with Attorney Hillis of the Plea Offer or concerning the claimed lack of diligence on counsel's part in pursuing plea negotiations more generally.

By Soto's own representation, Attorney Hillis told him in their first meeting that "it was [Soto's] choice to continue to trial."  Id. ¶ 5.  Soto also acknowledges that he rejected the Plea Offer.  Id. ¶ 13.

     B.     Sentencing

Prior to sentencing following Soto's conviction of two counts of conspiracy with intent to distribute, the Presentence Report ("PSR") prepared by the U.S. Probation Office established that Soto had a CHC VI and a total offense level of 38, which was based on more than 4.5 kilograms of crack cocaine.  See United States v. Sanchez et al., No. 3:9-CR-23-JCH-9, Presentence Report ("PSR") (Doc. No. 1622-1) ¶¶ 14, 37.  The PSR observed that a "conservative calculation" of the attributable drug quantity was between 50 and 150 kilograms of cocaine.  Id. ¶ 14.  The resulting advisory guideline range in the PSR was 360 months to life.

In his Sentencing Memorandum, Attorney Hillis raised two primary objections to the PSR.  See United States v. Sanchez et al., No. 3:9-CR-23-JCH-9, Def.'s Sentencing

4

Mem. (Doc. No. 1411) at 1-2.  First, he argued that Soto's base offense level should be 32, not 38, based on an attributable drug quantity of 5 to 15 kilograms of cocaine, rather than 50 to 150 kilograms.  Id.  Second, he argued that Soto's CHC should be IV, not VI, because a prior sentence for possession was arguably part of the charged conspiracy.  Id. at 2.  Attorney Hillis further argued that the CHC calculation, which incorporated two motor vehicle charges and two offenses with fines totaling $1,000, substantially over-represented the seriousness of Soto's criminal history in general.  Id. at 3.  Attorney Hillis urged the court, on that basis, to depart "horizontally" pursuant to United States v. Mishoe, 241 F.3d 214 (2d Cir. 2001) and, on the basis of the Booker factors, to impose a sentence of 120 months.  Id. at 4-6.

At Soto's sentencing, Attorney Hillis forcefully advocated these points.  In particular, he presented to the court at length his argument that Soto's attributable drug quantity was not 50 to 150 kilograms of cocaine, but 10 to 12 kilograms.  See United States v. Sanchez et al., No. 3:9-CR-23-JCH-9, Sentencing Tr. (Doc. No. 1511) at 3-19, 26-32.  While the court carefully considered Attorney Hillis's argument, and indeed acknowledged his advocacy on behalf of his client, id. at 15, the court did not agree that the evidence supported only the lower range, id. at 34.  The court found, on the contrary, that Soto had participated in the conspiracy for at least 124 weeks, id., and that the drug quantity reasonably foreseeable and thus attributable to Soto was at least 50 kilograms, id. at 33-36.  The court called this "a very conservative finding which is supported . . . by a preponderance of the evidence."  Id. at 36.

The court then determined that Soto had an offense level of 36 and CHC V, with a resulting guideline range of 292 to 365 months.  See id. at 39.  Persuaded partly by

Attorney Hillis's argument regarding Soto's criminal history, the court imposed a non-guideline sentence of 228 months on each of the two counts, to be served concurrently. See id. at 65-66; United States v. Sanchez et al., No. 3:9-CR-23-JCH-9, Judgment (Doc. No. 1426) at 1 ("The sentence imposed is a non-guideline sentence based on an overstatement of the defendant's criminal history.").

Soto appealed on the sole ground that the court erred in finding the attributable drug quantity was at least 50 kilograms of cocaine. See United States v. Sanchez, 455 F. App'x 27, 31 (2d Cir. 2012). On January 6, 2012, the Second Circuit affirmed the court's drug quantity finding. Id. at 32.

## II. LEGAL STANDARDS

### A. Section 2255 Motion

"Because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." Ciak v. United States, 59 F.3d 296, 301 (2d Cir.1995), abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162 (2002). "[C]ollateral attack on a final judgment in a criminal case is generally available under [section] 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (citation and internal quotation marks omitted).

In a section 2255 motion, the burden is on the petitioner to prove by preponderance of the evidence his entitlement to relief. See Napoli v. United States, 45 F.3d 680, 683 (2d Cir. 1995); Gotti v. United States, 622 F. Supp. 2d 87, 91 (S.D.N.Y.

2009).  The general rule that a court must construe pro se litigants' pleadings liberally "to raise the strongest arguments that they suggest" applies equally in the context of section 2255 motions.  Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001).

In deciding a section 2255 motion, the court must hold a hearing, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  However, a petitioner is not automatically entitled to a hearing, and no hearing is required where a petitioner's "allegations are 'vague, conclusory, or palpably incredible.'"  Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)); see also United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987) ("Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing.").  "The procedure for determining whether a hearing is necessary is in part analogous to, but in part different from, a summary judgment proceeding."  Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009).

"To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief."  Gonzalez, 722 F.3d at 131.  For ineffective assistance of counsel claims, the threshold evaluation in determining the necessity for a hearing is whether the petitioner's claim is "plausible," not whether that claim "will necessarily succeed."  Puglisi, 586 F.3d at 213.

B.   Ineffective Assistance of Counsel

Ineffective assistance of counsel is "[o]ne claim that may appropriately be raised for the first time in a [section] 2255 motion, 'whether or not the petitioner could have raised the claim on direct appeal.'"  Harrington v. United States, 689 F.3d 124, 129 (2d

7

Cir. 2012) (quoting Massaro v. United States, 538 U.S. 500, 504 (2003)). A petitioner claiming ineffective assistance of counsel "must show that (1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result." Id. (citing Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).

The Second Circuit has described the burden as "a heavy one because, at the first step of analysis, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. (citations and internal quotation marks omitted). "The determinative question at this step is not whether counsel 'deviated from best practices or most common custom,' but whether his 'representation amounted to incompetence under prevailing professional norms.'" Id. at 129-30 (quoting Harrington v. Richter, 131 S.Ct. 770, 788 (2011)).

To show the requisite prejudice, at the second step, a petitioner must show "a reasonable probability that his reliance on counsel's ineffective assistance affected the outcome of the proceedings." Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Where a petitioner pleads ineffective assistance in securing a plea, he "must demonstrate a reasonable probability that but for counsel's deficient performance, [he] would have pled guilty instead of going to trial." Raysor v. United States, 647 F.3d 491, 495 (2d Cir. 2011).

### III.   DISCUSSION

Soto's Section 2255 Motion alleges three failures by Attorney Hillis: (1) failure to diligently pursue the Plea Offer; (2) failure to raise the issue of foreseeable drug quantity at sentencing; and (3) failure to contest the criminal history points assigned in the PSR. The first ground of this Motion challenges the constitutional adequacy of counsel's

pretrial performance; the second and third grounds challenge the constitutional adequacy of counsel's performance at Soto's sentencing.  Mindful that Soto proceeds pro se, the court reads his "submissions broadly so as to determine whether they raise any colorable legal claims." Parisi v. United States, 529 F.3d 134, 139 (2d Cir. 2008). Having reviewed Soto's pleadings, the government's Opposition and exhibits, and the record of the underlying criminal case, the court finds no plausible basis for an ineffective assistance claim in connection with either the Plea Offer or Soto's sentencing.

    A.    Plea Offer

A criminal defendant's Sixth Amendment right to counsel "extends to the plea bargaining process." Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012).  Soto's claim for ineffective assistance in that process is subject to Strickland's two-part test, which requires him to show both deficient performance by counsel and prejudice to him as a result.  466 U.S. at 687-88.  Although Soto need not prove his claim at the outset, he must plead a "plausible" claim.  See Puglisi, 586 F.3d at 213.  Soto, however, has not plausibly pled deficient performance or prejudice, let alone both prongs.  Thus, despite his request for an evidentiary hearing, such a hearing is not required to decide this Motion.  See id.[3]

Under the performance prong of Strickland, "defense counsel must give the client the benefit of counsel's professional advice on th[e] crucial decision of whether to plead guilty," including by communicating to the defendant the terms of any plea offer, the

---

[3] Although Soto acknowledges Attorney Hillis's sworn affidavit, Soto provided no affidavit of his own.  See Pet'r's Reply (Doc. No. 20) ¶ 8.  Moreover, his Section 2255 Motion sets forth no specific facts that, if proven by competent evidence at a hearing, would entitle him to relief.  Indeed, Soto does not even deny the facts attested by Attorney Hillis, which facts are supported by credible evidence in the record.

"strengths and weaknesses of the government's case against him," and "the alternative sentences to which he will most likely be exposed." Purdy v. United States, 208 F.3d 41, 44-45 (2d Cir. 2000) (citations and internal quotation marks omitted). As attested by Attorney Hillis's affidavit, and as evidenced by his letter to AUSA Chen seeking an enlargement of time for Soto to accept the Plea Offer, Attorney Hillis advised his client of the benefits, while respecting that the decision was the client's to make. See Hillis Aff. ¶¶ 3-4; Gov't's Ex. C. Soto alleges no specific facts plausibly suggesting otherwise.

In his Motion, Soto alleges only that Attorney Hillis failed to diligently pursue the Plea Offer. See Pet'r's Mot. ¶¶ 4, 16, 45. Soto offers no details, however, to support that allegation. In his Reply to the government, Soto does allege, for the first time, that Attorney Hillis told him that, were Soto to go to trial, Soto would likely receive "the same amount of time (10 years)" offered by the government in the Plea Offer. Pet'r's Reply ¶ 6. Again, however, Soto provides no details, and certainly no details indicating that Attorney Hillis made the alleged statement, much less, that Soto relied on it, in the context of advice concerning the Plea Offer.

Soto's claim that Attorney Hillis's performance during pretrial plea negotiations was deficient lacks both plausibility and evidentiary support. None of Soto's allegations are concrete and detailed, nor are they supported by a sworn affidavit. Because these allegations are vague and conclusory, they do not warrant a hearing. See Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013); United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987).

The absence of specific allegations indicating that Attorney Hillis's performance was deficient with respect to the Plea Offer constitutes a sufficient basis to deny this

ground of Soto's Section 2255 Motion.  However, it bears emphasizing that Soto has not plausibly alleged facts which would satisfy the prejudice prong of Strickland either. Indeed, nothing in the record plausibly indicates that Soto was improperly advised regarding the Plea Offer or that, had he received proper or better advice, he would have pled guilty instead of going to trial.  On the contrary, the record credibly indicates that Soto was apprised of the likely consequences yet chose to go to trial.

The fact that Attorney Hillis failed to convince Soto to plead guilty and that Soto now faces a longer period of incarceration does not render counsel's advice to him constitutionally defective.  While counsel must advise a client of the possible ramifications of not taking a plea offer, counsel must, at the same time, not coerce a client into a plea deal.  See Purdy v. United States, 208 F.3d 41, 44-45 (2d Cir. 2000). Nothing in the record suggests that Attorney Hillis's conduct in connection with the Plea Offer fell outside the "wide range of reasonableness" afforded to defense counsel in meeting this dual obligation.  Id. at 45.

    B.    Sentencing

As second and third grounds for his ineffective assistance claim, Soto alleges that Attorney Hillis failed, respectively, to raise the issue of foreseeable drug quantity and to contest the criminal history points assigned in the PSR.  See Pet'r's Mot. ¶¶ 4, 19, 33, 45.  Each of these grounds lacks any basis in fact or law.

With respect to Soto's foreseeable drug quantity, abundant evidence in the record demonstrates that Attorney Hillis vigorously pressed the issue.  See Def.'s Sentencing Mem. at 1-2; Sentencing Tr. at 3-19, 26-32.  Indeed, at Soto's sentencing, both the court and the government remarked on Attorney Hillis's advocacy on behalf of his client.  See Sentencing Tr. at 15, 50.  Moreover, Soto already raised this issue on

11

appeal, and the Second Circuit expressly considered the issue in affirming the court's drug quantity finding. See Sanchez, 455 F. App'x at 31. Soto may not reargue the issue in his Section 2255 Motion. See United States v. Becker, 502 F.3d 122, 127 (2d Cir. 2007) ("[S]ection 2255 may not be employed to relitigate questions which were raised and considered on direct appeal." (quoting Cabrera v. United States, 972 F.2d 23, 25 (1992))).

While acknowledging that Attorney Hillis did raise this issue, Soto nonetheless claims that the issue was not addressed "in a constitutional manner." Pet'r's Mot. ¶ 19. Soto's claim rests on a mistaken view of a line of cases, of which the most recent is Alleyne v. United States, 133 S. Ct. 2151 (2013). Alleyne requires any fact, apart from criminal history, that triggers or increases the mandatory minimum to be found by the jury or, in the case of a plea, admitted by the defendant. Alleyne thus extends the logic of Apprendi v. New Jersey, 530 U.S. 466 (2000), which instituted this requirement with respect to any fact increasing the statutory maximum.

In Soto's case, the drug quantity triggering the applicable statutory maximum and mandatory minimum for each of the two counts was found by the jury. See United States v. Sanchez et al., No. 3:9-CR-23-JCH-9, Doc. No. 953. The issue of foreseeable drug quantity concerns only the court's determination of Soto's advisory guideline range, to which neither Apprendi nor Alleyne here applies. See United States v. McLeod, 251 F.3d 78, 82 (2d Cir. 2001) ("Apprendi is inapplicable to Guidelines calculations that do not result in a sentence on a single count above the statutory maximum for that count."); United States v. Ibrahim, 529 F. App'x 59, 64 (2d Cir. 2013) ("[A]pplication of guidelines enhancements that do not increase the statutory maximum

12

or minimum penalty neither implicates nor violates a defendant's Sixth Amendment right to a jury trial.").

With respect to the criminal history points assigned by the PSR, abundant evidence in the record again reflects Attorney's Hillis's diligent efforts on Soto's behalf. See Def.'s Sentencing Mem. at 2-6; Sentencing Tr. at 38-48.  In fact, Attorney Hillis's performance in this regard was to great effect.  His argument concerning criminal history was a key factor in the court's decision to impose a nonguideline sentence far below the bottom of Soto's guideline range.  See Sentencing Tr. at 66, 68; Judgment at 1 ("The sentence imposed is a non-guideline sentence based on an overstatement of the defendant's criminal history.").

Hence, there is no factual or legal basis to support either Soto's second or third ground for his ineffective assistance of counsel claim.  The record supports the contrary conclusion that Attorney Hillis's advocacy on behalf of his client, even if not successful in every particular, well exceeded the constitutional minimum.

### IV.  CONCLUSION

For the reasons set forth above, the court **DENIES** petitioner's Section 2255 Motion (Doc. No. 1).  The Clerk is hereby directed to close this case.

**SO ORDERED.**

Dated at New Haven, Connecticut this 5th day of February, 2014.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge